J-S39025-20

J-S39026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ABDULLAH MAURICE PROCTOR | : | |
| Appellant | : | No. 2446 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 4, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009909-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ABDULLAH MAURICE PROCTOR | : | |
| Appellant | : | No. 2466 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 4, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008511-2017

BEFORE:   LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                      **FILED SEPTEMBER 8, 2020**

Appellant, Abdullah Maurice Proctor, appeals from the judgment of sentence entered on April 4, 2019, as made final by the denial of Appellant's post-sentence motion on July 23, 2019.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The trial court ably summarized the underlying facts of this case.

On the morning of July 30, 2016, on the 3100 Block of North Sheridan Street, [Appellant] approached the victim, Donte Williams, wearing a black T-shirt over his face. Williams was sitting on a milk crate in view of a surveillance camera from a nearby grocery store located at 625 West Clearfield Street. As [Appellant] approached, [Appellant] pulled out a 9-mm Kel-Tec handgun and began shooting at Williams. Williams started to run and [Appellant] followed him, continuing to shoot. The victim ultimately ran into an alleyway, where [Appellant] continued to shoot. [Appellant] then ran down Sheridan Street toward Clearfield Street. Williams was transported to Temple Hospital, where he died later that morning. Williams suffered four gunshot wounds. One wound was to the left eye, one to the abdomen, one to the right knee, and one to the left hand. The medical examiner determined that the victim's cause of death was multiple gunshot wounds and the manner was homicide.

Officers arrived to process the scene around 12:17 p.m. Officers recovered from the scene lead and copper fragments, fired cartridge casings, a 9-mm live round, and a projectile.

At around 2:30 p.m. that same day, Tasha Bukton was walking down Clearfield Street and saw [Appellant], who was known to Bukton as "Dulla," with an individual known to her as "Lil Book." Bukton grew up in the same neighborhood as [Appellant] and knew him for most of his life. Bukton observed Lil Book pass a gun to [Appellant] and heard Lil Book tell [Appellant] to "clean it off" and get rid of it. Bukton then saw [Appellant] take out the clip and wipe it off with his shirt.

Less than three hours later, at approximately 5:20 p.m., Officer Michael James was on routine patrol with his partner on the 3100 block of North Darien Street when he observed [Appellant] walking with another male, later identified as Shakur Brown. Officer James got out of his patrol car and attempted to follow [Appellant] and Brown on foot. As Officer James approached the two men, [Appellant] and the other male walked behind a blue Ford Expedition parked on the east side of 3100 Darien Street. Officer James observed

Brown throw a firearm over a fence and [Appellant] place another firearm inside the Expedition's wheel well. Officer James arrested [Appellant] after police radio reported that [Appellant] did not have a valid license to carry a firearm. The firearm thrown over the fence was determined to be a 9-mm Kel-Tec handgun, later matched to the projectiles taken from the victim's body as well as the fired cartridge cases recovered at the scene on Sheridan Street.

At the time of his arrest, [Appellant] was wearing a black short-sleeved T-shirt with the words "bullet world" written on the top, a blue denim long-sleeved shirt, a green jacket, and a white sleeveless T-shirt. These items were brought to the chemical lab, where the black T-shirt and the white sleeveless T-shirt were tested for presence of gunshot residue. Gunshot residue was found on [Appellant's] black short-sleeved T-shirt.

Sometime after the incident, detectives met with Bukton and showed her the surveillance footage from the camera at 625 West Clearfield Street. At that time, she identified [Appellant] as the person in the video shooting at the decedent.

While [Appellant] was incarcerated following his arrest, he told his cellmate, Larry Maddox, that he had shot an individual using a 9-mm Kel-Tec handgun on Sheridan Street. According to Maddox, [Appellant] said that the person he had shot had previously shot [Appellant], causing [Appellant] to walk with a limp. [Appellant] described the shooting in detail, telling Maddox that he had seen the individual who had shot him on Sheridan Street, walked up to him and began shooting. [Appellant] also told Maddox that when the victim began to run he followed him continuing to shoot, eventually ending up in an alleyway. [Appellant] told Maddox that he had "smoked" the victim.

. . .

On April 4, 2019, following a jury trial . . . [Appellant] was convicted at docket number CP-51-CR-0008511-2017 [(hereinafter "Docket 8511-2017")] of one count of murder of the first degree, one count of carrying a firearm without a license, and one count of possessing an instrument of a

- 3 -

crime,[1] and at docket number CP-51-CR-0009909-2016 [(hereinafter "Docket 9909-2016")], of a second count of carrying a firearm without a license.[2] The [trial] court immediately imposed the mandatory sentence of life in prison for the first-degree murder charge. The [trial] court also imposed concurrent sentences [for the remaining charges]. . . . [Appellant] filed [a post-sentence motion at Docket 8511-2017 (but not at Docket 9909-2016), where he challenged the weight of the evidence supporting his convictions at Docket 8511-2017. The trial court denied Appellant's post-sentence motion and Appellant filed a timely notice of appeal.]

Trial Court Opinion, 11/25/19, at 2-4 (citations and some capitalization omitted).

Appellant raises one claim on appeal:

Is [Appellant] entitled to an arrest of judgment and/or new trial in the above-captioned matter on the ground that the jury's verdict was against the weight of the evidence in light of: (1) the inability of witness Tasha Bukton, aka Tahjai Wara, to see the shooter's face in the video of the incident, (2) the fact that [the] shooter was not limping in the video, (3) Ms. Bukton lying under oath on multiple occasions regarding her name, (4) the obvious motive of witness Larry Maddox to lie to curry favor with the Commonwealth, and (5) the failure of police to exclude Shakour Brown as a suspect after he was caught with the murder weapon?

Appellant's Brief at 3.

As our Supreme Court explained:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted

_____

[1] 18 Pa.C.S.A. § 2502, 6106(a)(1), and 907(a), respectively.

[2] 18 Pa.C.S.A. § 6106(a)(1).

> because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-1055 (Pa. 2013) (quotations and citations omitted).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." ***Id.*** at 1055. Our Supreme Court summarized:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:
>
> > The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for

> the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Id.* (quotations, citations, and emphasis omitted).

According to Appellant, the jury's verdict was against the weight of the evidence because: 1) the shooter's face was not visible in the surveillance video; 2) witness Tasha Bukton's identification of Appellant in the surveillance video was not credible because she lied about her name; 3) Tasha Bukton's identification of Appellant in the surveillance video was not credible because the shooter was not limping and the shooter's height, weight, and attire "was ubiquitous to young men in the area;" 4) witness Larry Maddox had a motive to lie; and, 5) the "police failed to submit the clothes of Shakour Brown for gunshot residue despite the fact that Brown was arrested in possession of the murder weapon and had the same height, complexion, and build of [Appellant]." Appellant's Brief at 11-12. These claims fail.

As the trial court thoroughly explained:

> At trial, the Commonwealth offered compelling evidence of [Appellant's] guilt. The shooting was captured by surveillance video from a nearby grocery store. Although [Appellant's] face in the video was largely obscured by a T-shirt that he had pulled over his head, witness Tasha Bukton, who had known [Appellant] for most of his life, recognized the shooter in the video as being [Appellant]. Bukton had seen [Appellant] earlier that day in distinctive clothing and was able to identify him in the video from that clothing, from his body structure, and from [Appellant's]

- 6 -

distinctive limp. Analysis of the video showed that in some of the frames, the shooter's lower face could be seen, revealing facial hair that matched the facial hair of [Appellant] at the time. Laboratory analysis uncovered gunshot residue on the T-shirt [that Appellant] was wearing when he was arrested on the day of the murder. Just before his arrest, a police officer observed [Appellant] walking next to, and talking with, a man who threw a firearm over a fence when the officer approached. Ballistics analysis proved that the gun thrown over the fence was the murder weapon. Following his arrest, [Appellant] [admitted] the killing to his cellmate, giving highly accurate details of the shooting. All of this was ample evidence to establish [Appellant's] guilt beyond a reasonable doubt, and did not, in any manner, shock the [trial] court's sense of justice.

[Appellant] offers five specific arguments in support of his weight of the evidence claim. First, [Appellant] claims that his conviction was against the weight of the evidence because of "the inability of witness Tasha Bukton to see the shooter's face in the video of the incident." Although throughout the surveillance footage the shooter was wearing a T-shirt over his face, Tasha Bukton testified she was able to identify the [Appellant] for multiple reasons. First, Bukton stated that she had grown up with [Appellant] and was familiar with his body structure and the way he looked. Second, Bukton told detectives that she had seen [Appellant] on the day of the shooting when she observed him having a conversation on the street with "Lil Book," and from that encounter she was able to recognize [Appellant's] clothing in the surveillance video. Third, Bukton testified that she was familiar with the limp [that Appellant] suffered, and that the shooter in the video had the same limp. Bukton testified confidently that [Appellant] was the shooter.

In addition, Detective Thorsten Lucke, testifying as an expert in video recovery and analysis, stated that in the video at certain points, it is possible to see the lower parts of [Appellant's] face. According to Detective Lucke, these points in the video revealed facial hair on the shooter consistent with [Appellant's] facial hair. This lent additional support to Bukton's claim that she could recognize the shooter in the video.

Accordingly, even though the shooter's face was covered for most of the video, Bukton's identification testimony was compelling evidence.

[Appellant] next claims that the verdict was against the weight of the evidence since the video used at trial does not show the shooter limping. [Appellant] apparently contends that the shooter's absence of a visible limp in the video undermines Bukton's identification. However, Bukton's observations regarding the video were corroborated by Detective Lucke, who testified that from his analysis of the video, "it appears [the shooter is] either favoring his left foot a little bit maybe or, again, he's taking an awkward step."

In addition, Bukton's identification was not based solely on the limp that she observed in the video. As described above, Bukton was specifically asked how she identified [Appellant] as the shooter and whether there was anything other than the limp that informed her identification. Bukton testified that she had grown up with [Appellant] and had seen him on the day of the shooting wearing the same clothing. She also recognized his body structure. She went on to say that "when you know a person, you see a person, you know how they look." The jurors, who viewed the video, were free to reject defense counsel's interpretations of the video and to credit the testimony of Bukton and Detective Lucke.

[Appellant] also claims that his conviction was against the weight of the evidence in light of Bukton lying under oath on multiple occasions regarding her name. It is true that Tasha Bukton had used multiple names. When originally interviewed by detectives, Bukton used the name Tahjai Wara. When Bukton took the stand at the preliminary hearing she gave her name as Tahjai Buxton, while at trial Bukton gave the name "Tahjai Wara" when she was sworn in.

However, Bukton explained that while Tasha Bukton was her legal name, she had used other names because of her concerns about being a witness in a murder case. The jury was free to accept this explanation and to conclude that her use of multiple names had little bearing on her credibility.

[Appellant's] next claim is that the verdict was against the weight of the evidence since Commonwealth witness Larry

- 8 -

Maddox, in an effort to curry favor with the Commonwealth, had a motive to lie under oath. It is true that Maddox, who testified about [Appellant's] admissions, had entered into a plea agreement on his own cases that required him to cooperate with the Commonwealth. It is also true that Maddox had a motive to help the Commonwealth in exchange for assistance in his own cases.

However, the jury was made fully aware of the plea agreement and Maddox's motive to help the Commonwealth. The jury was free to credit his testimony notwithstanding the evidence of his plea agreements.

Moreover, the specific details given by Maddox in the statements that he attributed to [Appellant] were substantially corroborated by other evidence and thereby gave Maddox more credibility than a typical jailhouse informant. According to Maddox, [Appellant] said that he had used a 9-mm Kel-Tec handgun in the shooting, while the ballistics evidence proved that the murder weapon was, in fact, a 9-mm Kel-Tec. [Appellant] also told Maddox that he had chased the decedent into an alleyway, which was corroborated by witness Sloan Maura, who testified that from inside his home, could see into an alleyway and observed the shooter standing over the victim continuing to shoot. Maddox also said that [Appellant] told him he had shot the victim on Sheridan Street, which was corroborated by surveillance footage showing the shooter on North Sheridan Street approaching the victim. As a result, Maddox was an effective witness.

[Appellant's] final claim is that his conviction is against the weight of the evidence in light of the failure of the police to exclude Shakur Brown as a suspect after he was caught with the murder weapon. It is true that Brown was observed by an officer in possession of the murder weapon hours after the shooting. However, at the time Brown was seen with the weapon, he was walking "shoulder to shoulder," directly next to [Appellant]. That Brown had the murder weapon in his hand at the moment police approached, several hours after the shooting, while walking right next to [Appellant], did not undermine the compelling evidence, described above, demonstrating that [Appellant] was the shooter.

- 9 -

Accordingly, the evidence adduced at trial plainly established that [Appellant] shot and killed Donte Williams.

Trial Court Opinion, 11/25/19, at 5-9 (citations and some capitalization omitted).

We agree with the learned trial court's cogent and thorough analysis and conclude that the trial court did not abuse its discretion when it denied Appellant's weight of the evidence claim. Accordingly, Appellant's claim on appeal fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/08/2020